GReen, J.,
delivered the opinion of the court.
This bill is filed by John Bobbitt, executor of James Bobbit, deceased, and James Wilson, against the heirs and administrator of Asher Flowers, deceased, to foreclose a mortgage, and for indemnity against liability as sureties of said Flowers, for the guardianship of his wards, Barnabas Flowers, and others.
The bill and exhibits show, that in November 1839, the said Asher Flowers, was appointed guardian for Barnabas Flowers, Harriet M. Flowers, .Calvin Flowers, and Burrell Flowers, minor children of Humphrey Flowers, deceased, and that he executed a bond as guardian, with James Bobbitt, Barnabas Flowers, Mary Flowers, and Obed Nicholson as his sureties.
On the 13th of February, 1841, said Asher Flowers executed a mortgage to James Bobbitt, on a tract of land of 200 acres, in Gibson county, for the indemnity of Bobbitt and his *512 co-securities, against any liability as sureties aforesaid. On first of July 1844, said Flowers, as the law required, renewed his guardian bond, with said James Bobbitt and James Wilson his sureties.
Asher Flowers has died, and the wards have sued the complainants on the guardian bond, and recovered judgment for considerable sums; and this bill is brought to be indemnified by the sale of the said land. The complainants allege the mortgage, and they also allege, that the land was purchased by Flowers with the money of his wards, and that as they have elected to seek their remedy against the sureties, the complainants ought to be substituted to the rights of the wards of Flowers, as against the land purchased with their money.
In defence it is insisted, the fund ought to be distributed pro rata among all the creditors of Flowers.
We think the mortgage in this case is a security for the liability of the mortgagees, by reason of their suretyship for Flowers as guardian. The renewal of the bond did not discharge the mortgage, but the execution of the new bond by James Bobbitt, in 1844, was a continuation of his former liability, and the security intended by the mortgage applied to the new bond, as well as to the one first taken; and that as James Bobbitt, one of the mortgagees, has been made liable for the defalcation of the guardian, he has a right to indemnity, by the sale of the mortgaged premises.
The creditors at large, of.Flowers, have no right to a pro rata distribution of the fund arising from the mortgaged premises, because the mortgagee, Bobbitt, has a specific lien for his indemnity, which the other creditors cannot displace.
It is true, Wilson, the other surety, was not liable, as such, when the mortgage was executed, but having become bound as co-surety with James Bobbitt in the bond of 1844, he has a right to the benefit of any collateral securities his co-surety *513 may have obtained from the principal debtor. If, therefore, James Bobbitt’s estate were indemnified by the mortgage to the extent, only, that it has been made liable, it is clear, that Wilson would have a right in equity, to contribution from James Bobbitt for an equal proportion of the sum he may have paid, as co-surety, and for which he had no indemnity.
The irresistible consequence is, that in order to secure James Bobbitt’s estafe against liability on account of this suretyship, the entire amount of such liability must be discharged, and, therefore, Wilson has an equal right with James Bobbitt’s executor, to a preference of satisfaction, over other creditors of Flowers.
The decree must be reversed, and the fund arising from the sale of the mortgaged premises, will be first applied to the indemnity of the complainants, and the balance will be distributed among the other creditors pro rata.